IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

RANDAL C ROBERTS,

    Plaintiff,

v.                                              CASE NO. 1:18-cv-3-MW-GRJ

CITY OF GAINESVILLE,

    Defendant.

_____/

# REPORT AND RECOMMENDATION

This case is before the Court on the Defendant's motion for summary judgment pursuant to Fed. R. Civ. P. 56. ECF No. 20. The Court notified Plaintiff of the motion, the requirements for responding to the motion, and the consequences of failing to respond. ECF No. 21. The Court established a deadline of December 12, 2018, for Plaintiff's response. *Id.* As of this date, Plaintiff has failed to respond. Upon due consideration of Defendant's motion and the evidentiary materials submitted in support, the undersigned respectfully recommends that Defendant's motion for summary judgment be granted.

## I. BACKGROUND

Plaintiff initiated this case by filing a *pro se* complaint against the City of Gainesville alleging one count of age discrimination in violation of the

Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et. seq*. Plaintiff is proceeding pursuant to an Amended Complaint, ECF No. 7.

Plaintiff alleges that he was employed by the Gainesville Police Department (GPD) as a detective in the Criminal Investigations Division (CID). In December 2014, a newly-appointed CID Commander, Lt. Michael Schentrup, allegedly stated during a briefing that he was "going to make it my mission to run all the 'Baby Boomers' out of" CID. ECF No. 7 at 5. At that time, Plaintiff was 54 years old. Plaintiff alleges that in the following weeks some older CID detectives were either transferred back to the Patrol Division or told that they would be transferred. Schentrup told Plaintiff that he would be transferred back to the Patrol Division in 2016. *Id.*

Plaintiff alleges that at a February 29, 2016, CID briefing, Schentrup told the division that Detective Corporal Quirk (age 45+), who was also assigned to the U.S. Marshals Task Force, had requested a transfer to the Patrol Division. Plaintiff alleges that he knew this to be untrue because he had spoken with Quirk and both Plaintiff and Quirk wanted to remain in CID. That same day, Plaintiff was called to a meeting with Schentrup and Sergeant Kay. Schentrup told Plaintiff (then age 56) that he would be transferred back to the Patrol Division during the October 2016 "Shift Pick". *Id.* at 5-6. Plaintiff spoke with Quirk who stated that Schentrup told him the

same thing.  According to Plaintiff, Quirk was upset about the "age discrimination" and decided to retire early.  *Id.* at 6.

Plaintiff was transferred to the Patrol Division in October 2016.  He filed an EEOC complaint, following which he alleges the transfers of the two remaining CID Detectives over age 45 were canceled.  After his transfer, Plaintiff applied for a lateral transfer to an administrative position.  Plaintiff alleges that there were three applicants, and "the youngest, least experienced officer who applied for the position was selected."  Plaintiff applied for another lateral transfer to the Traffic Safety Team.  Plaintiff was the oldest of the five applicants.  All the applicants were selected and transferred except for Plaintiff.  *Id.*

Plaintiff asserts that Defendant's actions violated the ADEA.  Plaintiff seeks monetary damages and reinstatement to his assignment as a major case detective working robbery-homicide cases in the CID.  *Id.* at 6, 12-13.

Defendant asserts that it is entitled to summary judgment for two reasons:  (1) Plaintiff's Complaint is untimely because it was not filed within 90 days of Plaintiff's receipt of the EEOC right-to-sue letter, as required by 29 U.S.C. § 626(e); and (2) even if the Complaint were timely, there is no direct or circumstantial evidence of age discrimination, and Defendant had legitimate, nondiscriminatory reasons for the challenged employment action.  ECF No. 20.

## II.  STANDARD OF REVIEW

Pursuant to Federal Rule of Civil Procedure 56(a), the entry of summary judgment is appropriate only when the Court is satisfied that "there is no genuine dispute as to any material fact and that the movant is entitled to a judgment as a matter of law." In applying this standard, the Court must examine the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits and other evidence in the record "in the light most favorable to the non-moving party." *Samples on Behalf of Samples v. Atlanta*, 846 F.2d 1328, 1330 (11th Cir. 1988).  "In determining whether summary judgment is appropriate, [the Court is] required to draw all reasonable inferences in favor of the non-moving party, not all *possible* inferences." *Horn v. United Parcel Services, Inc*. 433 F. App'x 788, 796 (11th Cir. 2011) (emphasis added)[2].

As the Supreme Court held in *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986), the moving party bears the initial burden of establishing the nonexistence of a triable issue of fact. If the movant is successful on this score, the burden of production shifts to the non-moving party who must then come forward with "sufficient evidence of every element that he or she

---

[2] Although unpublished opinions are not binding on this Court, they are persuasive authority.  11th Cir. R. 36-2.

must prove." *Rollins v. Techsouth*, 833 F.2d 1525, 1528 (11th Cir. 1987). The non-moving party may not simply rest on the pleadings, but must use affidavits, depositions, answers to interrogatories, or other admissible evidence to demonstrate that a material fact issue remains to be tried.

> The Eleventh Circuit has noted that
>
> [i]t is well settled that "after adequate time for discovery and upon motion, [summary judgment is appropriate] against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).  Accordingly, in response to a motion for summary judgment, a nonmoving-plaintiff must present evidence in support of his allegations sufficient to raise a genuine issue of material fact regarding each element of his claim.  As established in *Celotex,* it is not necessary for the party moving for summary judgment to introduce any evidence at all in order to prevail on his motion. Rather, in cases in which the nonmoving party will bear the burden of proof at trial, the movant can seek summary judgment by establishing that the opposing party has insufficient evidence to prevail as a matter of law, thereby forcing the opposing party to come forward with some evidence or risk having judgment entered against him. *Id.* Where the nonmoving party fails to present such evidence, "there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.*

*Maxi-Taxi of Fla., Inc. v. Lee County Port Auth., 3*01 F. App'x 881, 885 (11th Cir. 2008).  Where the nonmoving party bears the burden of proof, he must offer more than a mere "scintilla of evidence" in support of his position. *Anderson v. Liberty Lobby*, 477 U.S. 242, 252 (1986).

**DISCUSSION**

1. *Plaintiff's Complaint is Untimely*

Under Title VII of the Civil Rights Act of 1964, a plaintiff must file a judicial complaint within 90 days of receipt of a notice of right to sue from the EEOC. 42 U.S.C. § 2000e-5(f)(1); *see also Stallworth v. Wells Fargo Armored Servs. Corp.*, 936 F.2d 522, 524 (11th Cir. 1991) ("Title VII ... requires that suit be brought within 90 days after receipt of notice of right to sue"). Under the ADEA, a plaintiff also must file their complaint within 90 days of receipt of notice of right to sue. *Bost v. Fed. Express Corp.*, 372 F.3d 1233, 1238 (11th Cir. 2004) ("If the EEOC issues the employee a right to sue letter [under the ADEA], the employee must file a complaint within 90 days of the receipt of the right-to-sue letter"); *see also* 29 U.S.C. § 626(e).

Thus, to pursue his discrimination claims in this Court, Plaintiff must establish that his Complaint was filed within 90 days of his receipt of the EEOC's right-to-sue letter. See *Green v. Union Foundry Co.*, 281 F.3d 1229, 1233-34 (11th Cir. 2002) (citing 42 U.S.C. § 2000e-5(f)(1)). The Court determines on a case-by-case basis what constitutes "receipt" for purposes of triggering the 90-day limitations period. *Mack v. Delta Air Lines, Inc.*, 639 Fed.Appx. 582, 584 (11th Cir. 2016); *see also Zillyette v. Capital One Fin. Corp.*, 179 F.3d 1337, 1341 (11th Cir. 1999). In the Eleventh Circuit "the 90-day limitations period is to be analyzed on a case-by-case basis to fashion a fair and reasonable rule for the

circumstances of each case, one that would require plaintiffs to assume some minimum responsibility . . . without conditioning a claimant's right to sue . . . on fortuitous circumstances or events beyond his control." *Kerr v. McDonald's Corp.*, 427 F.3d 947, 952 (11th Cir. 2005) (citations omitted).

In this case, Defendant's summary judgment evidence reflects that Plaintiff's notice of right to sue was signed and sent to Plaintiff by certified mail on September 21, 2017, to the address provided by the Plaintiff on his EEOC documentation. ECF No. 20-3 at 1-4. According to the USPS tracking history for the certified mail, a delivery notice was left at Plaintiff's residence on September 27, 2017. ECF No. 20-4 at 1-3. The tracking reflects that Plaintiff did not pick up the right-to-sue letter until October 5, 2017, although he testified in his deposition that he picked it up within a "day or two" of the notice. *Id.;* ECF No. 20-1 at 4. If the 90-day period ran from the date that the tracking shows Plaintiff picked up the letter (October 5, 2017), then Plaintiff had until January 3, 2018, to file his Complaint and the Complaint filed on January 2, 2018 (*see* ECF No. 1) would be timely.

The Eleventh Circuit, however, requires plaintiffs to assume some "minimum responsibility" in resolving their claims. *Zillyette,* 179 F.3d at 1341-42. In the context of determining the date a right-to-sue letter is received for purposes of the statute of limitations, the Eleventh Circuit has held that a plaintiff is entitled to a reasonable time to pick up the letter upon receipt of a notice of

delivery, and that a three-day period is presumptively reasonable. *Id.* The Court held that such a rule is consistent with Fed. R. Civ. P. 6(d), governing the time for taking action after service by mail. Further, "[p]roviding a three-day period also provides a clear rule that will enable parties to be aware of when they must act or forfeit their right to sue." *Id.* at 1342.

Applying this rule to the facts of this case, the 90-day limitations period started running on September 30, 2017, three days after the Postal Service delivered the certified mail notice to Plaintiff's address on September 27, 2017. *See id*. Therefore, to be timely, Plaintiff's Complaint should have been filed by Friday, December 29, 2017. The instant Complaint, filed on January 2, 2018, is untimely by four days and therefore subject to dismissal. *See, e.g., Law v. Hercules, Inc.*, 713 F.2d 691, 692-93 (11th Cir. 1983) (Title VII complaint properly dismissed where filed 91 days after receipt of notice of right to sue). Although the limitations period may be equitably tolled in appropriate circumstances, *see Zillyette,* 179 F.3d at 1342, the summary judgment record before the Court presents no basis for such tolling. Therefore, Defendant is entitled to summary judgment because Plaintiff's ADEA claim is untimely.

2. *Defendant is Entitled to Summary Judgment on the Merits*

Even if the Complaint were timely, the evidence before the Court establishes that Defendant is entitled to summary judgment on the merits of Plaintiff's ADEA claim. The ADEA prohibits an employer from "discharg[ing] any

individual or otherwise discriminat[ing] against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1).  To establish a *prima facie* case of age discrimination in violation of the ADEA, the Plaintiff must show that 1) he is a member of a protected class of persons, 2) that he was subjected to an adverse employment action, 3) that a substantially younger person filled the position from which he was transferred, and 4) that he was qualified to do the job. *Turlington v. Atlanta Gas Light Co.*, 135 F.3d 1428, 1432 (11th Cir.1998). The ADEA's requirement that an employer took adverse action "because of" age means that age must be "the 'reason' that the employer decided to act." *Gross v. FBL Fin. Servs., Inc.,* 557 U.S. 167, 176 (2009).  If a plaintiff establishes a prima facie case of discrimination, the employer must articulate a legitimate, nondiscriminatory reason for the challenged employment action. *Chapman v. AI Transp.*, 229 F.3d 1012, 1024 (11th Cir. 2000).  The burden then shifts back to Plaintiff to establish that the proffered reason is merely pretextual.  *Id.*

Defendant does not dispute that Plaintiff was a member of a protected class of persons (at least 40 years of age).  Defendant's summary-judgment argument focuses on its assertion that Plaintiff cannot establish that he suffered discrimination based on his age by either direct or circumstantial evidence, and alternatively that Defendant had a legitimate, nondiscriminatory reason for Plaintiff's transfer from his CID assignment.  ECF No. 20.

With regard to direct evidence of discrimination, Plaintiff's Complaint points to Schentrup's alleged statement that he would "run all the 'Baby Boomers' out of" CID.  ECF No. 7.  Defendant denies that the comment was made, and despite Plaintiff's assertion that the statement was made in front of 24 witnesses there is no evidence in the record corroborating Plaintiff's claim.  Nonetheless, the statement at most suggests, but does not prove, a discriminatory motive.  While the phrase "baby boomer" may be inferred as a reference to age, in the context of Schentrup's proffered approach to managing CID staffing the phrase could also be interpreted to refer to officers' years of service, a consideration that is not necessarily age-based.  "If the alleged statement suggests, but does not prove, a discriminatory motive, then it is circumstantial evidence." *Gloetzner v. Lynch*, 225 F. Supp. 3d 1329, 1349 (N.D. Fla. 2016).

Plaintiff points to the reassignments of other CID officers, as well as his own reassignment, as circumstantial evidence of age-based discrimination.  ECF No. 7.  Schentrup's affidavit, however, states that his aim as CID Commander was to shift CID detectives with numerous years of service to other divisions.  Thus, Schentrup's focus was on the length of time that officers had served as CID detectives, rather than on the officers' ages.  Schentrup Aff.; ECF No. 20-2 at 1-10.

Schentrup states that he became CID commander at the age of 46, and that he brought with him to the CID a philosophy that long-time CID detectives

(those with "7, 8, 9, 10 years" in CID) should return to Patrol or move to other special assignments within the agency in order to train less-experienced officers, as well as to give other officers an opportunity to serve in CID. Schentrup's experience supervising patrol officers persuaded him that more officers should be afforded an opportunity to gain investigative experience through a special assignment at CID. Notably, assignment to CID is considered a "special assignment," and while officers in CID use the title "Detective" they do not have a separate pay grade or rank. CID assignments are temporary and such assignments are within the sole discretion of the Chief of Police. In furtherance of his philosophy, Schentrup informed CID officers in March 2015 that they should begin looking at other positions or special assignments within the GPD. Schentrup Aff.; ECF No. 20-2 at 1-10.

While Schentrup served as CID Commander, there were 15 personnel changes. Of the 15 changes, seven were of personnel that Schentrup considered "long-time": Detectives David Cannon (age 55, 24.2 years in CID) and Joseph Mayo (age 57, 22.4 years in CID) retired pursuant to the State's Deferred Retirement Option Program ("DROP"). Sgt. John Nabet (age 53, 7.2 years in CID) voluntarily transferred to the Patrol Division. Corporal Farrah Lormil (age 39, 7.3 years in CID) and Corporal Victoria Young (age 36, 9.9 years in CID) transferred to the Patrol Division in conjunction with their promotions to Corporal. Schentrup initiated the transfers of Plaintiff (then age 56) who had

been in CID for 12.5 years and Sgt. Gregory Armagost (age 55), who had been in CID for 6.5 years.  *Id.*

Five long-time CID detectives remained in the CID for various reasons, such as having highly specialized training.  These five officers were Corporal Chuck Dale (age 50, 9 years in CID); Detective Matthew Goeckel (age 34, 6.8 years in CID); Detective John Madsen (age 40, 7.1 years in CID); Officer Marc Woodmansee (age 53, 11.7 years in CID); and Corporal William Quirk (age 45, 12.5 years in CID).  Schentrup avers that he applied his philosophy across the board to all long-time CID members regardless of age, and that had the younger members such as Lormil and Young (ages 39 and 36, respectively) not transferred out on their own he would have transferred them.  By the time that Plaintiff transferred to the Patrol Division, all long-time CID officers (other than those noted above) had been transferred.  *Id.*

This evidence supports a finding that Plaintiff's age was not the but-for reason for his transfer to the Patrol Division.  Notably, the summary judgment evidence demonstrates that younger officers were subject to Schentrup's decision and older officers within Plaintiff's age range remained at CID due to their particular expertise.  This evidence supports Defendant's argument that Schentrup's aim was to move CID expertise to other areas of GPD and to provide opportunities for other officers to gain investigative experience within the CID.  In short, these are legitimate, nondiscriminatory reasons for making

personnel decisions, and Plaintiff has not shown that the reasons were a pretext for age discrimination.  *See Chapman v. AI Transp.,* 229 F.3d 1012, 1024 (11th Cir. 2000) ("Provided that the proffered reason is one that might motivate a reasonable employer, an employee must meet that reason head on and rebut it, and the employee cannot succeed by simply quarreling with the wisdom of that reason.").

To the extent that Plaintiff claims he was also discriminated against when he was not selected for the special assignments he applied for after being transferred from CID, his allegations fall far short of establishing a *prima facie* case.  *See* ECF No. 7.  Plaintiff contends that younger officers were selected, but there is nothing in the record from which the Court could conclude that Plaintiff's age was the but-for reason for those personnel decisions.

## RECOMMENDATION

For the foregoing reasons, it is respectfully **RECOMMENDED** that Defendant's motion for summary judgment, ECF No. 20, should be **GRANTED** because the Complaint is untimely and alternatively because

Defendants are entitled to summary judgment on the merits of Plaintiff's claims.

**IN CHAMBERS** this 14th day of January 2019.

*s/Gary R. Jones*
GARY R. JONES
United States Magistrate Judge

### NOTICE TO THE PARTIES

**Objections to these proposed findings and recommendations must be filed within** fourteen **(14) days after being served a copy thereof.  <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u> A copy of objections shall be served upon all other parties. If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a report and recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions.** *See* **11th Cir. Rule 3-1; 28 U.S.C. § 636**.